UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
(WESTERN DIVISION)

| | | |
|---|---|---|
| **ZOBELE MEXICO, S.A. DE C.V.** | : | CASE NO. |
| Carretera a Sahuaripa KM. 4.5 | : | |
| 83299 Hermosillo, Sonora | : | **Judge** |
| Mexico, | : | |
| | : | **COMPLAINT** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| **TSS TECHNOLOGIES INC.** | : | |
| c/o Marc Drapp, Chief Executive Officer | : | |
| 8800 Global Way | : | |
| West Chester, OH 45069, | : | |
| | : | |
| *Defendant.* | | |

The Plaintiff, Zobele Mexico, S.A. de C.V. ("Zobele"), for its claims for relief against the Defendant, TSS Technologies Inc. ("TSS"), states as follows:

**Parties, Jurisdiction & Venue**

1.      Plaintiff Zobele Mexico, S.A. de C.V., part of the Zobele group, is a company duly formed and existing under the laws of Mexico, with its principal place of business in Hermosillo, Sonora, Mexico. It manufactures products used in the consumer goods industry.

2.      On information and belief, TSS Technologies Inc. is an Ohio corporation, with its principal place of business at 8800 Global Way, West Chester, Ohio. TSS produces complex electro-mechanical machinery to be used to assemble products.

3.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. This Court has personal jurisdiction over Defendant because Defendant is incorporated in this State, and its principal place of business is in this judicial district.

5. Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391 because defendant has its principal offices in this district and therefore resides in this district.

**FACTS**

6. Zobele operates as a contract manufacturer to blue-chip companies who market products under well-known and respected brand names in the fast-moving consumer goods (FMCG) industry. Among other products, Zobele manufactures bottles filled with fragrances for use in electrical plug-in air freshener systems.

7. Zobele entered into a contract with one of its customers (the "Customer"), under which Zobele would deliver specialized bottles to the Customer, consisting of two joined glass bottles filled with fragrances. Zobele agreed to produce two versions of the same product for the Customer. The first was the then-current version being used by the Customer. Zobele and the Customer agreed that Zobele would take over production of the the-current version of these bottles from another source. The second was a planned revised design version of the bottles. Zobele and the Customer agreed that Zobele would be the only manufacturing source for the revised-design version of the bottles.

8. The two versions of the bottles were similar enough to fit into the same electrical air-freshener dispensing devices. The parties agreed to a contract under which TSS was to manufacture a machine to produce both versions, but with changes in tooling fixtures.

9. To produce the products for its Customer, Zobele was required to glue two empty glass bottles together, fill them with specified fragrances, insert a wick and stopper into each bottle, close the bottles with a cap, and then package them into shelf-ready retail packaging.

10.     Gluing the two empty glass bottles together is essential to both the manufacturing process and the function of the product.

11.     In or around March 2017, Zobele and TSS entered into a contract (the "Contract"), under which TSS agreed to supply an industrial machine to Zobele, namely an "Empty Glass Bottle Gluing Delivery System" (the "Machine") for Zobele to glue together two empty glass fragrance bottles for the Customer's specific shapes and configuration on an automated basis.

12.     Before the parties entered into the Contract and on or about February 21, 2017, TSS sent Zobele a proposal and a Power Point presentation, specifying how the Machine would satisfy Zobele's requirements to glue two empty glass fragrance bottles together.  Although the proposal stated that the contract would be subject to TSS's "Standard Terms and Conditions of Sale, annexed hereto," TSS never provided Zobele with any "Standard Terms and Conditions of Sale."

13.     On or about March 8, 2017, Zobele sent TSS a purchase order for the Machine described in the TSS proposal and the TSS PowerPoint, thus forming the Contract.

14.     Under the Contract, the TSS Machine was required to be able to glue together both versions of glass bottles, with changes in tooling fixtures.

15.     Pursuant to the Contract, the price of the Machine and installation was to be $460,365, payable in installments.

16.     Originally, the Machine was to be delivered to and installed at Zobele by TSS in or around May 2017.  Because TSS had problems developing and constructing a functioning Machine, TSS delayed shipping the Machine to Zobele's factory in Mexico until in or around September 2017.  TSS then installed the Machine at Zobele's facility.

17. Zobele expended substantial funds in connection with the installation of the Machine, in the reasonable belief that the Machine would operate properly in accordance with its specified parameters, as per Zobele's Contract with TSS.

18. Upon installation, however, the Machine did not work, and since installation the Machine has never worked. It suffered continual failures, stoppages, unacceptable and damaged bottles, and was unable to perform its contracted-for task, namely gluing two empty glass fragrance bottles together at a specified line-speed, for a specified run period of time.

19. TSS initially undertook to correct the malfunctions and defects in the Machine. Zobele gave TSS the opportunity to do so. In October, November, and December 2017 and January 2018, TSS personnel spent considerable time at Zobele's factory in Mexico trying to repair the Machine or replace various parts of it, in a futile effort to get the Machine to perform its contracted task. Despite its extensive efforts, TSS was unable to construct and/or repair the Machine so that it could perform the functions for which Zobele contracted.

20. During this period, Zobele expended significant additional time and money, in accordance with TSS's demands. For example, TSS claimed that Zobele needed to make various modifications to its factory, its processes, and its supplies, for the Machine to operate properly. TSS claimed that if Zobele expended the funds for these modifications, the Machine would operate properly. Although Zobele followed TSS's instructions and demands and expended these additional funds for the modifications, the Machine continued to fail to operate properly and within its specified parameters.

21. Despite TSS's efforts, and Zobele's efforts at TSS's demand, the Machine did not work. TSS was unable to repair the Machine, or to cause it to operate properly.

22. In or about early December 2017, Zobele asked TSS to remove the Machine from the Zobele factory because it did not function properly despite extensive efforts by TSS and Zobele. On December 22, 2017, TSS refused to remove the Machine, and instead proposed to continue to try to repair the Machine.

23. In November 2017, with Zobele still unable to deliver product to its Customer due to the continued failures of the TSS Machine, Zobele had to cover by purchasing glued glass bottles from other sources and by obtaining machines from other sources for ongoing production of additional glued glass bottles.

24. More specifically, for the first product version, Zobele had to purchase already-glued-bottles from a third-party supplier, at significant cost, to meet the needs of its Customer. Zobele also had to purchase additional bottles to replace the empty bottles damaged and scrapped due to the Machine's malfunctions.

25. For the second product version, Zobele covered by developing, out of necessity, four semi-automated lines that it subsequently purchased and installed, beginning in late February 2018, to glue together the new versions of the empty glass bottles, which were due to launch in March 2018. In so doing, Zobele was forced to incur the significant additional cost of the replacement machines and their installation. In addition, in order to cover, Zobele was, and continues to be, required to engage additional personnel to operate the semi-automated lines for the new product version.

26. Zobele was forced to take these steps to cover to avoid losing its Customer and incurring significant financial penalties for delaying the launch of the new product version.

27. TSS refused to issue any refund to Zobele for any portion of the purchase price that Zobele paid to TSS. Instead, TSS continued its fruitless efforts to repair the Machine. In

5

late January 2018, TSS's personnel left Zobele's factory after further fruitless attempts to repair the Machine. The Machine was still not operational.

28. On February 1, 2018, Zobele formally requested that TSS remove the non-working Machine from its premises and ship it back to Ohio. TSS refused to do so. In fact, TSS failed to even respond substantively to Zobele's demand.

## **FIRST CLAIM FOR RELIEF**

**(Breach of Contract)**

29. Plaintiff Zobele incorporates the facts, allegations, and averments contained in Paragraphs 1-28 as if fully restated herein.

30. Zobele and TSS entered into a valid and enforceable Contract for the purchase and sale of the Machine, according to the specifications set forth in the proposal and the PowerPoint, for the purpose of properly gluing together the two different, specified versions of the glass bottles.

31. Zobele performed its obligations under the Contract.

32. TSS breached the Contract by failing to deliver a Machine that performed in accordance with its contracted-for parameters.

33. In the course of its efforts to repair the Machine, TSS claimed to Zobele that it would render the Machine properly operational if Zobele made certain modifications to its factory, its process, and its supplies, and/or performed additional testing and/or purchased additional equipment or parts.

34. In reliance on TSS's claims, Zobele agreed to do so, and it did so at considerable costs and expense.

6

35. Despite Zobele's expenditures, TSS could not make the Machine operational in accordance with its specifications.

36. By reason of the foregoing, TSS breached its contractual obligations to Zobele.

37. As a direct and proximate result of TSS's breach of contract, Zobele has been injured and damaged in an amount to be established at trial, but not less than $2,055,000.

## SECOND CLAIMS FOR RELIEF

### (Breach of Express and Implied Warranties)

38. Plaintiff Zobele incorporates the facts, allegations, and averments contained in Paragraphs 1-37 as if fully restated herein.

39. In its proposal, TSS expressly warranted that the parts, equipment, assemblies, and prototypes it developed would be free of defects in material and workmanship for normal use and service for a period of one year.

40. TSS also expressly warranted that the Machine would operate in accordance with all specifications and descriptions set forth in any and all of TSS's statements about the Machine, including the proposal and the Power Point, and with all requirements agreed to in the Contract.

41. In addition, the Contract was subject to warranties implied by law including, but not limited to, the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. TSS knew the Machine would be used for such purpose, and agreed to supply the Machine for use in gluing empty glass fragrance bottles together.

42. By reason of the forgoing, TSS breached its express and implied warranties with respect to the Machine.

43. As a direct and proximate result of TSS's breach of express and implied warranties, Zobele has suffered damaged in an amount to be established at trial, but not less than $2,055,000.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff respectfully requests judgment in its favor and against the Defendant as follows:

1. For an award of compensatory damages in an amount to be established at trial, but not less than $2,055,000;

2. For an award of interests, costs, and attorneys' fees as permitted by law; and

3. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

OF COUNSEL:

| | |
|---|---|
| Dean R. Nicyper, | /s/ **Phyllis E. Brown** |
| Chaya F. Weinberg-Brodt | Phyllis E. Brown (0037334) |
| Withers Bergman LLP | Adam Brown (0078803) |
| 430 Park Avenue | Brown Law Firm LLC |
| New York, New York 10022 | 250 East 5th Street, Suite 1500 |
| (212) 848-9800 – Telephone | Cincinnati, Ohio 45202 |
| (212) 848 9888 – Facsimile | (513) 878-2700 – Telephone |
| Dean.Nicyper@WithersWorldwide.com | (513) 906-4440 – Facsimile |
| Chaya.Weinberg-Brodt@WithersWorldwide.com | pbrown@blfohio.com |
| | abrown@blfohio.com |

*Attorneys for Plaintiff,*
*Zobele Mexico, S.A. de C.V.*

8